## Case No. 2,715.

### CHURCHILL et al. v. The BRITISH AMERICA.

[9 Ben. 516.][1]

District Court, E. D. New York. May, 1878.

COLLISION — LIMITATION OF LIABILITY — THE RIGHTS OF FOREIGNERS—PRACTICE—INJUNCTION.

1. The statutes of the United States, limiting the liability of ship-owners, Rev. St. 4282 to 4289, cannot be resorted to for the purpose of limiting the liability of a foreigner for a collision between an American and a foreign vessel, occurring on the high seas and beyond the territorial limits of the United States.

[Cited in Re Long Island Transp. Co., 5 Fed. 620.]

2. Courts of admiralty of the United States are authorized in a proper case to apply the rule of the general maritime law according to which the extent of the liability of owners of foreign vessels for collisions upon the high seas may be determined.

3. Where a British ship has been proceeded against in a district court of the United States, for a collision, happening on the high seas, and the parties affected have appeared, such district court has jurisdiction to decree the owners of such ship to be entitled to the benefit of a rule of the general maritime law, permitting them to abandon their vessel and freight, and thereupon to be exempted from further responsibility.

4. The district court has the power to issue an injunction order restraining the prosecution of suits against the ship and the ship-owners who have sought the benefit of the rule of the maritime law limiting their liability. Such an order is an essential part of the relief intended to be conferred by the rule of the maritime law.

5. The libellants in this court, having also commenced an action in personam against the owners of the ship in the southern district of New York, and having been unable to serve process upon any of them because of their being foreigners and non-residents, and such owners never having voluntarily appeared in that action, the injunction prayed for was ordered to be issued, provided that the ship-owners should first enter their appearance in the action pending in the southern district.

[In admiralty. Libel by George Churchill and others against the ship British America to recover damages caused by collision.]

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

W. W. Goodrich, for libellant.
Scudder & Carter, for Miller.

BENEDICT, District Judge. On the 12th day of February, 1878, the above-named defendants, who are the owners of the American brig called the Carrie Winslow, commenced an action in rem in this court against the British ship called the British America, to recover the sum of $201,000, being the damages alleged to have been sustained by reason of a collision between the two vessels above mentioned. [See Case No. 1,895.] The value of the British America being far less than the damages claimed, another action was commenced by the same libellants, against the owners of the British America, to recover of them in personam the same damages. This latter action was commenced in the southern district of New York, and as yet no service of process has been effected therein nor any appearance entered.

Thereafter the owners of the British America commenced this proceeding to obtain from this court a limitation of their liability to the value of their vessel at the time of the collision, and an injunction restraining the farther prosecution of suits against them to recover damages arising out of this collision. This proceeding was commenced by the filing of a libel in which, while denying any liability for the collision, the owners of the British America claim that in any event their liability is limited to the value of their vessel, and they tender a stipulation with sufficient sureties for the full value of the vessel at the time of the collision, whereby they agree to pay into court, for distribution in this action, the amount of such value, and they pray that in case it be found that the collision in question arose from fault on the part of the British America they may have the benefit of the limitation of liability according to the general maritime law, and as provided by section 4283 of the Revised Statutes of the United States. They further pray that a monition issue citing and admonishing all persons having claims against them arising out of the collision referred to, to appear and make proof of their respective claims, and that the value of said vessel may be apportioned by this court among the parties entitled thereto, and that an order may be made to restrain the further prosecution of all and any suit or suits against the said ship or her owners, in respect of any claim arising out of said collision, and that the depositions already taken in the action against the ship may be used on the trial of this action, and that such further relief may be granted as to the court shall seem meet.

Having filed their libel the owners of the British America now ask this court to ascertain by appraisement the value of the ship, and for leave to file a stipulation to represent the vessel according to the prayer of their libel, and that the monition prayed for be now issued, and also that meanwhile,

and until the hearing of the cause, an order be made restraining the owners of the Carrie Winslow and her cargo from prosecuting any suits against them to recover damages arising out of the collision in question. Notice of those several applications having been given to the proctors of the owners of the Carrie Winslow, and of the officers and crew, and of the owners of the cargo, an appearance for those parties has been entered in this proceeding by their proctor and they now oppose the present motion.

The ground taken in opposition is that the owners of the British America are not entitled to a limitation of their liability to the value of the vessel, and that the court has no jurisdiction to entertain the present proceeding or to grant the relief prayed for, by reason of the fact that the ship British America is a British vessel, and the collision referred to occurred on the high seas and without the territorial limits of the United States. In disposing of this objection the first question to be considered is, whether the statute of the United States, limiting the liability of ship-owners (section 4283, Rev. St.), has any effect to limit the liability attaching to the owners of this British vessel by reason of a collision occurring on the high seas and without the territorial limits of the United States.

My opinion in regard to the extra territorial effect of this statute of the United States has been recently expressed in the case of Thomassen v. Whitwell [Case No. 13,929]; it is therefore sufficient here to refer to the opinion there delivered, for the reasons which have led me to the conclusion that the statute of the United States to which reference has been made, has no extra territorial effect and cannot be resorted to for the purpose of limiting the liability of a foreigner for a collision occurring on the high seas and beyond the territorial limits of the United States.

The question then arises whether there may be any rule of the general maritime law by which the extent of the liability of these ship-owners for the collision in question is fixed. And it must here be held—as in the case just cited it was held upon the authority of the supreme court of the United States—that there is a rule of the general maritime law, according to which the extent of the liability of ship-owners for collision upon the high seas may be determined, and which courts of admiralty are authorized in a proper case to apply.

But it is supposed that those conclusions are not sufficient to dispose of the present case, because of the fact that one of these vessels was American and the other British, and here the application is by British subjects to have enforced by an American court against American citizens a rule from which these applicants could derive no benefit in the courts of their own country, inasmuch as the English have enacted a statute, in terms made applicable to foreigners, which

deprives not only citizens but foreigners in the courts of that country of any benefit of the rule of the general maritime law.

Whether a foreigner, in such a matter as this, is entitled to ask at the hands of this court a greater exemption than is allowed him by the laws of his own country, and whether it rests with the courts to take notice of the absence of reciprocity in statutory provisions respecting the limitation of the ship-owner's liability, and whether the enactment of such a statute as the English statute above referred to, can have the effect to suspend the operation of the rule of the maritime law in regard to the citizens of that nation, and whether the rule of the maritime law can be given effect in a case like this between a British and an American vessel, are questions that have not been very fully argued before me, and cannot properly be finally disposed of upon this motion. It appears sufficient, therefore, for the present occasion, to say that it is not so clear to my mind that these ship-owners are without a right to resort to this court for the relief they seek, as to justify me in refusing them protection during the pendency of the litigation, provided such protection is a part of the relief that this court is competent to grant.

It has been contended that this court has no jurisdiction to entertain such a proceeding as this, and if the proceeding can be upheld, that the court is without power to issue a restraining order, such as is sought to be obtained by the present motion. If these ship-owners, whose vessel has been proceeded against in this court, and who have also been sued in another district upon demands arising out of the same collision, have the right to be exempted from further liability upon abandoning their interest in the vessel, no reason occurs to me upon which to deny them access to the courts for the purpose of enforcing that right, and that they may resort to a court of admiralty for that purpose seems to follow from the decision of the supreme court in the case of the City of Norwich (Wright v. Norwich, 13 Wall. [80 U. S.] 104) and the general admiralty rules Nos. 54, 55, 56, and 57. In the case cited it was held that courts of admiralty have jurisdiction to enforce the provisions of the statute in respect to the limitation of the liability of ship-owners, because of the subject matter, and if a proceeding to take the benefit of a statute in regard to the limitation of a ship-owner's liability, is within the jurisdiction of the admiralty, by reason of the subject matter, a fortiori is a proceeding to take the benefit of a rule of the general maritime law upon the same subject within that jurisdiction. I am therefore of the opinion that this court, where the vessel is being proceeded against, and where the parties to be affected have appeared, has jurisdiction to decree these libellants to be entitled to the benefit of a rule of the general maritime

law, permitting the ship-owner to abandon his vessel, and thereupon be exempted from further responsibility.

An essential part of the relief intended to be conferred by the rule of the maritime law, to which reference has been made, consists in restraining actions brought to enforce the liability from which exemption is sought. This is made evident by the provision in respect to an injunction, which appears in the rules prescribed by the supreme court for proceedings taken to obtain the benefit of the statute. The only difference between such a proceeding and the one under consideration is, that the former is taken to obtain the benefit of a limitation, declared by a statute of the United States, while this is taken to obtain the benefit of a limitation declared by the general maritime law. The two proceedings are alike in character, have the same object in view, should be conducted substantially in a similar manner, and must be given equal scope and effect. The general admiralty rules referred to, therefore, not only make manifest that the power to issue such an injunction is a power necessary to the exercise of the jurisdiction in question, but they furnish authority for the existence of such a power. The power, by virtue of which an injunction is issued in proceedings under the statute, is not derived from the general admiralty rules, but follows from the provisions of the constitution and the statutes by which the district courts of the United States are given jurisdiction of all admiralty and maritime cases. The general admiralty rules do not confer jurisdiction, but simply regulate the manner of exercising the jurisdiction conferred by law under authority derived from the statute which makes the form and modes of proceeding, in cases of admiralty and maritime jurisdiction, subject to regulation by the supreme court, by rules prescribed from time to time, not inconsistent with the laws of the United States. Rev. St. § 913.

Since then the power to issue such an injunction as is here prayed for, is by the general admiralty rules recognized as existing in the district courts, those rules, of themselves, furnish authority in favor of the existence of the power here sought to be called into action. For these reasons I am of the opinion that the application for a preliminary injunction cannot be denied upon the ground of want of power in this court to grant the relief sought.

A single feature of this case remains to be noticed. On the part of the creditors of this ship it is contended that if it be held that this court has the power to restrain their proceedings, brought to recover the damages they have sustained by the collision, the injunction should issue only upon the condition that the ship-owners enter their appearance in the action already commenced in the southern district of New York. In this

I am of the opinion that the creditors are right, and for this reason. The questions involved are new, and the proceeding here instituted is without known precedent. An injunction at the present time without such a condition, might inflict irreparable injury, because the creditors may now be able to serve their process, or compel an appearance by attaching property in their action in personam, but may be wholly unable to do so hereafter, and may thus lose the benefit of their action, although the final decision as to the present proceeding should be in their favor; while on the other hand no injury will result to the ship-owners by so appearing, if in the end the present proceeding be sustained. These considerations appear to me to entitle the creditors of this ship to ask of the ship-owners, as a condition of obtaining an injunction at this time, that they appear in the action now pending against them in the southern district of New York.

The order will therefore be that a monition issue, according to the prayer of the libel, and that an appraisement of the vessel be had, and that upon the filing in this proceeding of the stipulation tendered in the libel, a preliminary injunction issue restraining, until the final decree of this court in this cause, all proceedings on the part of the parties now before the court, to enforce against these libellants any liability arising out of the collision in the pleadings mentioned, either in the two actions heretofore mentioned, or any other action, provided the libellants first duly enter their appearance in the action pending in the southern district.

Because of the novelty of the proceeding the injunction should also be so framed as to permit testimony to be taken in the action in rem, as well as in the one in personam, provided consent be given that such testimony be read in any of the three proceedings. If for any cause it be deemed undesirable to enter such appearance at this time, the libellants may take a denial of the present motion, with leave to renew the same when they shall be served with process in the action referred to, or their appearance be otherwise compelled.